Staples, J.
The original bill in this case was filed to enforce the lien of a judgment recovered by the appellee against the appellant, for the balance of unpaid purchase money due upon the sale of a tract of land made by John Keller, the appellee’s intestate. The appellant filed an answer which he asked might be treated ás a cross-bill, and it was so treated in the court below. To this bill, the appellee demurred, the demurrer was sustained, and the bill dismissed. From that decree an appeal was taken to this court. In passing upon the- questions arising in the case, we must of course, take all the material averments of the bill to be true.
*491 The facts appear to he, that upon the death of George Koontz, in 1838, his real estate was divided among his four children and heirs. The commissioners who made the partition, designated the four tracts or parcels as lots Eos. 1, 2, 3, 4. In making the partition, they assigned to the owners of lots Eos. 1 and 2, the privilege of getting water from the well on lots Eos. 3 and 4, and the use of the lanes running from the main road across the tract, on both sides, to get to their wood land, and to drive the stock of each lot respectively to the water.
In the year 1837, William Koontz, the owner of the tract known as lot Eo. 4, conveyed it to John Keller, and in the year 1860, John Keller conveyed it to the appellant, by a deed with covenants of general warranty, of quiet possession, and that the premises are free from incumbrances.
The appellant in his bill, avers that since the rendering of the judgment against him, and indeed since the institution of this suit, he has ascertained that his vendor John Keller did not have a good and perfect title to the land, for the reason that the tract so conveyed is charged and burdened with certain water rights and privileges in favor of other parties, of a character extremely detrimental to the use and value of the same. That the tenements known as lots Eo. 1 and Eo. 2, have been sold in sundry parcels, to different purchasers, and that the injury to the appellant’s land and the depreciation of its value, has increased, and will continue to increase in proportion to the number of subdivisions and families located upon the same, the number of stock owned by them, and other circumstances attending the ownership of said parcels entitled to such privileges.
He further avei*s that said cixeumstances so sei'iously affect and intexffere with the ownership of the land, as to induce him to desire the rescission of the contract, *492 and the return of his money, subject to any proper deductions for rent, &c., and if that cannot be properly done, he prays an issue to ascertain his damages growing out of the breach of warranty, and that the same may be set off against the claim of the appellee.
This is the whole case made by the bill, so far as is material to the present enquiry.
Taking every allegation of the bill as true, the question is, whether the appellant is entitled to relief, upon his own showing?
It will he observed, the appellant does not aver any eviction or disturbance of his possession, or the exercise of the water rights and privileges by the owners of lots Kos. 1 and 2. The appellant does not even allege a claim asserted on their part to the exercise of such rights and privileges, or any action pending or threatened to enforce the same. Trom the silence of the bill on this point, it is a matter of great doubt whether indeed there has ever been any such exercise of the water privileges as would amount to a disturbance, during the time the land was owned by John Keller, from 1837 to 1860. Certainly there was nothing of the kind from the -year 1860, down to the time of the institution of this suit in 1875.
If the owners of the dominant tenements had exercised, or claimed to exercise, the alleged water privilege, whilst the appellant has been in possession, it is impossible to suppose he could have been ignorant of the fact. It is equally impossible to suppose that any damage or even inconvenience results from an easement the existence of which was unknown to the owner of the serviant tenement for fifteen years, and the enjoyment of which, it does not appear has ever been asserted or insisted upon, and may never be insisted upon. The sole question therefore is whether the mere existence of the easement or encumbrance is *493 such a breach of covenant as entitles the appellant to stay the collection of the purchase money, and to demand an enquiry of damages by a court of equity?
There is no doubt, a covenant against encumbrances is broken immediately upon the execution of the deed, if there be an existing encumbrance upon the property. If or is the covenantee compelled to wait until he is ousted- or disturbed in his possession. "Where the encumbrance is in the nature of a mortgage, or other security for money, the covenantee may himself pay it off, and call upon the covenantor for compensation. But if the encumbrance has not been paid off, and no eviction or disturbance has taken place, the covenantee can recover nominal damages only; for he may never be disturbed in his possession. 2 Lomax Digest 352, side p. 271; Rawle on Covenants of Title 89, 93. On the other hand, if the encumbrance be of such a character, that it cannot be removed by the covenantee, as in the case of servitude or easement, he may sue on the covenant for damages; but if he has not been disturbed, or sustained some real injury from the easement, his damages will he merely nominal.
As was said by Judge Woodward, of the supreme court of Pennsylvania, in Beaupland v. McKeen, 4 Casey R. 130, “It is a delicate matter to interfere between vendor and vendee; for in determining the possibilities of an eviction we have not before us the paramount claimant on whose will and rights the liability to eviction depends. Possibly he has no rights, as would appear the moment he attempts to assert them; or if he have rights, it is possible he may never attempt to assert them; and in either case it would be against conscience and equity to allow the purchaser to keep the land on which so unsubstantial a cloud rests, and also the money he agreed to pay as the price of the property.”
*494 And so, in the present case, it may he as stated by the circuit judge, the several alienations of the lands Nos. 1 and 2, to different purchasers, in different parcels, may have operated to extinguish the encumbrance upon the lands of the appellant, and the right may never be asserted. However that may be, it is manifest, if the appellant is entitled to any recovery upon the facts set out in his hill, his recovery would be merely nominal damages, and no more.
The numerous adjudged cases on this subject will show that this court has gone very far in. staying the collection of the purchase money for land upon proof of a defect of the title where no suit is pending, or even threatened. But even here a distinction has always been made between an injunction to a judgment for the purchase money and an injunction to a sale under a deed of trust. In the latter case the court interferes the more readily upon the ground of removing a cloud upon the title, in order to prevent a sacrifice of the property; whereas, in a like case, the court will not interfere with the vendor in enforcing his judgment, since the doubt about the title may eventually turn out to he frivolous and groundless. Miller vs. Argyll’s ex’or, 5 Leigh 460, 508; Koger v. Kane, Ibid. 606.
But apart from all these considerations, the present hill is a mere suit for damages. It is true there is a sort of conditional prayer for a rescisión of the contract; hut by common consent this is abandoned as untenable, and the case therefore stands simply as an action for damages in a court of chancery.
In this respect, it is almost indentical with that of Robertson v. Hogshead, 3 Leigh 667. In that case Judge Tucker said, (and the other judges concurred), “As the form of proceedings then excludes the possibility of *495 recission, the bill can only be looked on as a bill for an injunction to restrain the payment of an unpaid balance of purchase money, until a claim for unliquidated damages shall have been settled by an issue to be directed by the court. But it has long been settled that unliquidated damages cannot be set off in equity. Duncan v. Lyons, 3 John. Ch. R. 351; Webster v. Couch, 6 Rand. 519. The party aggrieved should have instituted the proper proceedings at law, and ascertained his damages, before he attempted to ai’rest the payment of the instalment of the purchase money remaining due.”
These observations of Judge Tucker, apply with peculiar force to the present case. The only difference between the two cases is that in Robertson v. Hogshead, the controversy was between vendor and vendee, whilst here, the contention is between the vendee and the personal representative of the vendor.
It is suggested by counsel, that great injustice may be done in requiring appellant to pay over the purchase money whilst there is an incumbrance upon it, to the distributees of the vendor; and take his chances of recovering it back.
The bill, however, does not contain any allegation of insolvency, or any other equitable consideration justifying a court of equity in taking jurisdiction of the case, and awarding damages.
If the money should be paid over to the distributees of the vendor, it will be only upon the execution of refunding bonds to the administrator, which will afford ample security to the appellant.
For these reasons, and without going into a consideration of the other grounds of the circuit court, for its decision, we think that court did not err, in sustaining the demurrer, and dismissing the bill.
*496 But such, dismissal ought to have been without prejudice to any action at law, the plaintiff may bring for damages on account of a breach of contract, or. any bill in equity, he may he advised to file upon a proper case for the jurisdiction of that court.
Decree aeeirmed, but without prejudice.